**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | **1:11-CR-261** |
| | : | |
| HASSAN HASSAN, | : | |
| | : | |
| Defendant. | : | **Honorable T.S. Ellis, III** |
| | : | |

**PETITION FOR WRIT OF ERROR _CORAM NOBIS_**
**Pursuant to the All Writs Act, 28 U.S.C. § 1651(a)**

**Introduction**

1. Petitioner Hassan Hassan (hereinafter "Hassan") asks this Court to grant a writ of error coram nobis overturning his 2012 conviction for conspiracy to distribute cathinone because his trial counsel provided ineffective assistance of counsel regarding advising Hassan of the immigration consequences of his conviction.

2. Currently, Hassan is a 59-year old lawful permanent resident living at 4601 Mayhunt Court Alexandria, Virginia. He also owns a home at 5244 Elbetee Lane, Alexandria. Hassan has been employed in the same security position at the Virginia Hospital Center for over fifteen years.  Hassan entered this country legally from Canada with his United States citizen wife Amira Ahmed and his United States citizen son Liban Ahmed in 2001. Hassan adjusted his status to lawful permanent resident on March 31, 2008.

3. Hassan's trial counsel mistakenly advised Hassan to plead guilty to the drug count, instead of going to trial or negotiating a better plea. Hassan was told in meetings with his immigration attorney and homeland security prior to his plea that he would not be deported. When Hassan returned to this country on January 30, 2023, from visiting his

mother in Canada, he was briefly detained, his green card was seized.  Hassan is now required to check-in with ICE regularly pending deportation proceedings, despite his extensive ties to the United States, his non-existence ties to Somalia, and his extensive health problems.

4.  Mr. Hassan suffers from serious and ongoing medical conditions, including: Type II Diabetes, requiring strict management, hydration, and stress avoidance. Recent significant medical treatment and procedures, including documented care through Virginia Hospital Center and specialists, who suspect that Mr. Hassan may be suffering from stage 3 lymphoma. Mr. Hassan's treating physician guidance emphasizes the need to avoid physical and emotional stress.

## Procedural & Substantive History of the Case

5.  In May 2011, Hassan was arrested and charged in a two-count indictment with conspiracy to distribute cathinone, or khat,[2] and the less serious offense of conspiracy to commit money laundering, along with 17 other defendants.

6.  Hassan was a 43 year-old permanent resident – a green card holder, a resident of Virginia, with a U.S. citizen wife and a U.S. citizen son.  Hassan had come to this country from war-torn Somalia at the age of 18 years old and has never returned.

7.  Hassan hired to represent him Douglas McNabb, who was admitted in this case pro hac vice. Dkt. 49-50. Attorney McNabb is who Hassan discussed the case with and from whom Hassan received advice. Because McNabb was unfamiliar with federal court

---

[2] Khat is both legal and culturally acceptable in East Africa, including Somalia, and is used and taxed like coffee or cigarettes.

2

McNabb hired attorney Greg Stambaugh to represent Hassan in court. Hassan was confused by this, did not understand the relationship and considered McNabb his attorney.

8. On May 20, 2011, this Court ordered Hassan held in detention pending trial in this case. Dkt. 13. On July 22, 2011, this Court granted Hassan bond. Dkt. 95.

9. Hassan met with trial counsel who impressed upon Hassan that cooperation a quick resolution to the case by pleading guilty and cooperating was the best overall result considering the entire situation.

10. On September 1, 2011, Hassan signed a plea agreement agreeing to plead guilty to the most serious count of the two count indictment: count one, conspiracy to distribute cathinone. While the less serious count, count two conspiracy to commit money laundering was dismissed without prejudice. Dkt. 217.

11. Paragraph 19 of the plea agreement recited that the plea "may" have immigration consequences if Hassan is not a citizen. It further stated that "removal is presumptively mandatory" for the charge of conspiracy to distribute cathinone. Dkt. 217 at 11, ¶ 19. The paragraph concluded that the defendant wants to plea guilty "even if the consequence is . . . automatic removal from the United States." *Id.*

12. Contrary to that statement in meetings with his attorney and homeland security regarding his cooperation in this case Hassan was assured that he would not be deported.

13. On that same date, September 1, 2011, Hassan pled guilty. Dkt. 216.

14. Over a year later, on January 6, 2012, Hassan was sentenced to 6 months imprisonment. Dkt. 323. Hassan's reporting was delayed pending a Rule 35 motion. Dkt. 325.

15. During sentencing a short discussion with the Court reflected Hassan's understanding, that he would not be deported:

Now, you are a permanent legal resident which, I think, expires in 2018, Mr. McNabb?

ATTORNEY McNABB:  I don't know.  Mr. Hassan --

THE DEFENDANT:  Yes.

ATTORNEY McNABB:  -- is shaking his head, yes.

THE COURT:  2018 expiration.  I think that it is up to the Department of Homeland Security whether they pursue this matter, but I have taken care to impose a sentence less than a year to see that that's minimized; and if you receive cooperation, perhaps that would be a further aid to your remaining in the United States.

January 6, 2012, sentencing transcript at 22.

16. Hassan is and has been a lawful permanent resident since March 31, 2008.

17. More than a year after Hassan's guilty plea, on May 18, 2012, his attorney McNabb emailed Hassan and informed him that he should speak to an immigration attorney and that Hassan might consider applying for temporary protected status.  This was the first immigration advice that trial counsel gave to Hassan, other than the assurances in meetings with homeland security that he would not be deported.

18. Pursuant to Hassan's good faith believe that his status as a non-deportable lawful permanent resident was valid, in January, 2023, Hassan travelled to Canada to visit his mother.

19. Upon Hassan's re-entry into the United States on January 30, 2026, he was detained for about four hours, his green-card was seized from him, and he was served with a Notice to Appear, a required step prior to initiating removal proceedings against Hassan.

20. Hassan is required to check-in with ICE regularly, his last ICE check-in was April 8, 226, and his next ICE check-in is May 19, 2026.  At any of these check-ins, Hassan could be placed in immigration detention and then deported.

21. It was only upon re-entering this country from Canada on January 30, 2023, that Hassan learned that he was at a real risk of deportation.

### Brief background of Hassan

22. Hassan was born in Somalia on August 26, 1967. When Hassan first entered the United States in April 2001, he entered legally from Canada with his United States Citizen wife and in 2008 became a lawful permanent resident.

23. In the time that he has lived in the United States, Hassan has established significant family ties to this country. Hassan's strong family ties to this country include his United States Citizen wife Amira Ahmed, and his United States Citizen son Liban Ahmed.

### Standard of Review

24. The burden is on the petitioner to prove his claim by a preponderance of the evidence.

### The Legal Standard of Ineffective Assistance of Counsel (hereinafter "IAC")

25. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684–

86 (1984). A claim of IAC "is an attack on the fundamental fairness of the proceeding." *Id.* at 697. To establish an IAC claim, the defendant must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Id.* at 687.

26. In determining if counsel's performance was deficient, reviewing courts judge "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Thus, although "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," a court must look ultimately to the reasonableness of counsel's performance in light of contemporary professional norms. *Id.* at 689–90. "The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland*, 466 U.S. at 688). To ascertain prevailing professional norms for attorney performance, reviewing courts look to professional standards such as those promulgated by the American Bar Association. *Padilla*, 559 U.S. at 366–67; *Strickland*, 466 U.S. at 688.

27. To demonstrate that counsel's deficiency caused prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. *a*t 694. The Court in *Strickland* clarified that, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Supreme Court has further elaborated that the reasonable probability standard is a standard *lower* than "more likely than not." *See*

*Holland v. Jackson*, 542 U.S. 649, 654 (2004) ("The quoted language does not imply any particular standard of probability."); *Woodford v. Visciotti*, 537 U.S. 19, 22 (2002) (noting that *Strickland* "specifically rejected the proposition that the defendant had to prove it more likely than not that the outcome would have been altered"). In the plea context, prejudice is not measured by the likely outcome of a trial. Rather, prejudice is measured by whether, had counsel accurately advised the petitioner, whether petitioner might have chosen reasonably to proceed to trial rather than enter a plea. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). That is, to prove prejudice in the context of plea advice, a "reasonable probability" exists if the defendant "convince[s] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.

**Hassan's Sixth Amendment Right to the Effective Assistance of Counsel Was Violated.**

28. Hassan's trial counsel misadvised him about the consequences of his plea because he assured Hassan that he would not be deported while in meetings with Homeland security prior to the guilty plea in this case. Trial counsel thus affirmatively and incorrectly advised Hassan that the plea agreement and conviction were in his best interest.

29. Hassan was prejudiced by trial counsel's deficient performance. Had Hassan known the immigration consequences of his plea and conviction, Hassan would not have pled guilty to count one, but would have pled not guilty and insisted on a trial or sought a different plea agreement, such as a plea to count two with a loss of under $10,000 rather than the high risk that he would be deported. These allegations sufficiently establish prejudice. Although a trial would still present the risk of deportation, it would provide Hassan the opportunity to both negotiate a better plea or contest the prosecution's evidence in this case. *See United States v. Akinsade*, 686 F.3d 248, 256 (4th Cir. 2012) (prejudice found

7

where, but for "counsel's affirmative misrepresentations" regarding deportation, defendant could have presented evidence at trial to remove crime from class of mandatory deportation). The evidence of against Hassan was both contestable – he was not found in possession, and because of his extensive cooperation, a non-deportable plea could have easily been arranged.

30. In *Zemene v. Clarke*, 768 S.E.2d 684, 687 (Va. 2015), a lawful permanent resident pled guilty to a misdemeanor with immigration consequences. In finding trial counsel's performance deficient, the Supreme Court of Virginia noted that trial counsel failed to determine whether a suspended sentence of twelve months on a petit larceny conviction would have immigration consequences and never discussed the consequences with the defendant. *Id.* at 690. The Court granted the petition because Zemene was prejudiced by the immigration consequences. *Id.* at 692.

## Coram Nobis Relief is Available in this Case

31. To be eligible for coram nobis relief, a petitioner is obliged to satisfy four prerequisites. *Bereano v. United States,* 706 F.3d, 568, 576 (4th Cir. 2013).

32. First, a more usual remedy such as habeas corpus must be unavailable. *Id.* Habeas corpus is unavailable in this case because the statute of limitations has passed and because Hassan is not in custody.

33. Second, there is a diligence requirement. There must be a valid basis for the petitioner having not earlier attacked his conviction. *Id.* Hassan did not previously attack his conviction because the consequences were not known to him until both his January 30, 2023, seizure of his green card and the recent requirement of the check-ins with the new threat of detention and deportation at anytime.

8

34. Third, the consequences flowing from his conviction must be sufficiently adverse to satisfy Article III's case or controversy requirement. *Id.* That is clearly so here, as deportation is a severe consequence.

35. Fourth, and finally, the error that is shown must be of the most fundamental character. *Id.* Ineffective assistance of counsel for providing incorrect immigration advice constitutes such a fundamental defect. *United States v. Akinsade*, 686 F.3d 248, 260 (4th Cir. 2012).

36. WHEREFORE, on the basis of the above grounds, Hassan respectfully requests this Court grant the writ and vacate his conviction. In the alternative, he asks that this Court grant an evidentiary hearing at which he can prove the facts in support of his claim.

Respectfully submitted,

Hassan Hassan,
By Counsel

Respectfully submitted,

By: /s/ *Jonathan P. Sheldon*

Jonathan P. Sheldon, VA bar 66726
SHELDON & FLOOD, PLC
10621 Jones Street, Ste. 301A
Fairfax, VA 22030
(703) 691-8410 (phone)
(703) 383-1684 (fax)
jsheldon@sfhdefense.com

*Attorney for the defendant.*

9

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2026, I filed the foregoing with the Clerk of Court using the CM/ECF system which will send an electronic copy, and we emailed a copy, to the following:

Heather Call, Chief of Narcotics unit, heather.call@usdoj.gov.
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314

By: /s/ *Jonathan P. Sheldon*
Jonathan P. Sheldon, VA bar 66726
SHELDON & FLOOD, PLC
10621 Jones Street, Ste. 301A
Fairfax, VA 22030
(703) 691-8410 (phone)
(703) 383-1684 (fax)
jsheldon@sfhdefense.com

10

## VERIFICATION TO
## PETITION FOR WRIT OF ERROR CORAM NOBIS

I, Hassan Hassan, do say:

1) I have read my federal petition for writ of error coram nobis.

2) The facts stated therein are true to the best of my information and belief.

I declare under the penalty of perjury that the foregoing is true and correct.

_Hassan_ 05/06/2026

Hassan Hassan          Date