IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.

HASSAN HASSAN,

*Defendant.*

Case No. 1:11-cr-261-PTG

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S PETITION FOR WRIT OF ERROR *CORAM NOBIS***

Defendant Hassan Hassan has petitioned for a writ of error *coram nobis* pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See* ECF No. 888 ("Petition"). Defendant pleaded guilty on September 1, 2011, to one count of conspiracy to distribute and to possess with intent to distribute cathinone, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *See* ECF No. 217. The Court sentenced him to six months of incarceration on January 6, 2012. *See* ECF No. 325. He now attempts to invoke the extraordinary remedy of *coram nobis* relief to have his conviction overturned on the grounds of ineffective assistance of counsel, based on his attorney's alleged failure to convey the potential immigration consequences of a conviction prior to his guilty plea.

However, Defendant has failed to satisfy the diligence requirement for *coram nobis* relief, as he has not provided a valid basis for failing to launch an earlier attack on his conviction. Nor has Defendant established a fundamental error in his criminal proceedings, because he has not met his burden to show both (1) that his attorney failed to advise or misadvised him regarding deportation consequences; and (2) that there is a reasonable probability that had he fully

understood the immigration implications of his plea he would not have pleaded guilty. On any of these independent bases, the Court should deny his petition.

## I. Factual Background and Procedural History

Defendant is a citizen of Somalia. *See* Statement of Facts, ECF No. 218, at 1. At some point prior to 2011, he obtained lawful permanent resident status in the United States. *Id.*[1] Between 2009 and 2011, Defendant was involved in a large conspiracy to distribute khat, which contains the drug cathinone, a Schedule I controlled substance. *Id*. He was charged with sixteen other defendants in a Superseding Indictment alleging conspiracy to distribute and to possess with intent to distribute cathinone in violation of 21 U.S.C. §§ 841(a)(1) and 846, as well as conspiracy to commit money laundering contrary to 18 U.S.C. § 1956(h). *See* ECF No. 28.

According to the Stipulated Statement of Facts, Defendant and his co-defendants sourced khat from international suppliers, including in Europe. *See* ECF No. 218 at 2. At the behest of the group leader, Defendant distributed some of the khat to other co-conspirators for further distribution. *Id.* Defendant also engaged in financial transactions by which he transmitted drug proceeds electronically to overseas drug suppliers to obtain yet more drugs, thus furthering the cathinone-trafficking enterprise. *Id.* at 3. The conspirators' drug venture trafficked more than one million grams of khat, including by Defendant personally, netting the group nearly six million dollars in drug proceeds. *Id.* at 4; *see also* Superseding Indictment, ECF No. 28 at 16. Although Defendant distributed khat to others within the syndicate, he did not occupy the highest tier of

[1] Due to the age of this case, materials pertinent to this motion were archived and have been requested from off-site storage. The government filed an unopposed motion for an extension of time to accommodate this process, which is still pending as of the time of this filing. *See* ECF No. 891. The government will share these materials with defense counsel when and if they are located. If the Court grants the extension motion, the government will submit a short supplement regarding the pertinent contents, if any, or an update if nothing is found by the proposed extended deadline.

liability within the group. *See* Sentencing Tr., Jan. 6, 2012, at 11:5-12:4 (attached as Exhibit A). Rather, he acted largely at the direction of the main defendant, Yonas Ishak. *Id.*

Defendant cooperated early with the government and was the fourth of seventeen defendants to plead guilty. *See id.* at 10:20-24, 12:16-19; *see also* Plea Agreement, ECF No. 217. Defendant entered into a plea agreement with the government by which he would plead guilty to Count One (conspiracy to distribute cathinone) and the government would dismiss Count Two (money laundering conspiracy). Plea Agreement, ECF No. 217, at 1. Importantly, the Plea Agreement included a paragraph regarding "Impact of Guilty Plea on Immigration Status." *Id.* at 11. This paragraph states in full:

> [t]he defendant recognizes that pleading guilty may have consequences with respect to defendant's immigration status if defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. *Indeed, because defendant is pleading guilty to Conspiracy to Distribute Cathinone, removal is presumptively mandatory.* Because removal and other immigration consequences are the subjects of a separate proceeding, the defendant understands that no one, including defendant's attorney or the District Court, can predict to a certainty the effect of the defendant's conviction on defendant's immigration status. Defendant nevertheless affirms that defendant wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, *even if the consequence is the defendant's automatic removal from the United States.*

*Id.* at 11-12 (emphasis added). Defendant initialed each page in ink. *See id.*

The Court accepted his plea of guilty to Count One on September 1, 2011, and dismissed Count Two as to Defendant on the government's motion.[2] On January 6, 2012, the Court sentenced Defendant to a six-month term of imprisonment. *See* Judgment, ECF No. 325. At the time of his sentencing in 2012, Defendant had lawful permanent resident status that was set to expire

[2] The government has requested the plea hearing transcript, but the court reporter who covered the hearing no longer works in the district. Successor court reporters are working to try to obtain the file but have not yet been able to do so.

(independently of Defendant's conviction) in 2018, as the parties and the Court noted at the sentencing hearing. *See* Petition at 4.

Fifteen years after his conviction, Defendant filed the instant petition to overturn his conviction, based on his counsel's alleged failure to advise Defendant of the immigration consequences of his guilty plea. What prompted Defendant to file this petition, according to Defendant, was a January 30, 2023, border crossing from Canada into the United States on the way back from a personal trip. *See* Petition at 5.[3] Defendant asserts that during this encounter, customs officials detained him, seized his green card, and issued him a Notice to Appear, which he describes as "a required step prior to initiating removal proceedings." *Id.*[4]

Defendant's petition alleges undated, unspecified "meetings with his attorney and homeland security" during which he "was assured that he would not be deported." *Id.* at 3. These meetings occurred "prior to the guilty plea in this case," per Defendant. *Id.* at 7. The only "immigration advice that trial counsel gave" him, according to Defendant, was a post-sentencing email in which prior counsel advised him to speak to an immigration attorney. *Id.* at 4.

Three attorneys appeared on behalf of Defendant in this matter prior to his current counsel's appearance this year – Juan Milanes (now a federal administrative law judge), Gregory Stambaugh, and Douglas McNabb. Judge Milanes was CJA counsel and had been appointed to represent Defendant at the initial appearance on May 18, 2011. *See* CJA Appointment, ECF No. 11. At the arraignment on June 24, 2011, Judge Milanes withdrew when Mr. Stambaugh and Mr.

[3] The Petition refers to this trip as having occurred on January 30, 2023 (page 1 and 5) and as having occurred on January 30, 2026 (page 5). Defense counsel clarified that the trip occurred in 2023, not 2026.

[4] The government has requested Defendant's "A-File" but needs materials that are in the off-site case file to complete the request. This may shed light as to whether there have been other immigration-related contacts or communications between 2011 and 2023.

McNabb substituted for him. *See* Minute Entry, ECF No. 49. Mr. Stambaugh was local counsel supporting the *pro hac vice* appearance of Mr. McNabb, who lived and practiced in Texas. *See* Pro Hac Vice Application and Order, ECF No. 50. Undersigned counsel reached Mr. Stambaugh and Judge Milanes by phone. Both stated that Mr. McNabb was Defendant's primary defense attorney and was the one who negotiated the plea agreement. Mr. Stambaugh served only as local counsel and stated that he had no substantive involvement in the case. Judge Milanes was only in the case for a short time before Mr. McNabb substituted in. Neither was present during any meeting with the Department of Homeland Security at which immigration was discussed.[5]

Unfortunately, Mr. McNabb passed away in 2024. *See* Exhibit B. Memorials and internet materials extol him as a highly experienced criminal defense attorney who specialized in international matters. *See id.* He had also been a professor of criminal law in Texas, where he lived at the time of his *pro hac vice* admission here. *See* ECF No. 50. Mr. McNabb had been admitted to all federal appeals courts and several district courts, dating back to the early 1980s. *Id.* at 2. In light of Mr. McNabb's passing, the record in this case cannot be further developed as to what was or was not said between him and Defendant regarding the immigration consequences of Defendant's plea.

## II. Legal Background

The All Writs Act, 28 U.S.C. § 1651, authorizes a federal court "to grant a writ of error *coram nobis* to vacate a conviction after the sentence has been served." *United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988). This is "an exceptional remedy that may be granted only when a fundamental error has occurred and no other available remedy exists." *United States v.*

[5] The government does not believe it is in dispute that Mr. McNabb was Defendant's main attorney at the time in question and so has not obtained a declaration from Judge Milanes nor Mr. Stambaugh as to their non-involvement in the issues at stake here.

*Swaby*, 855 F.3d 233, 238 (4th Cir. 2017). The district court must presume that the underlying proceedings were free of constitutional error unless the petitioner satisfies his or her burden of establishing entitlement to the writ. *Hanan v. United States*, 402 F. Supp. 2d 679, 684 (E.D. Va. 2005). This burden is greater than that of a petitioner seeking *habeas corpus* relief. *Id.*; *see also United States v. Denedo*, 556 U.S. 904, 916 (2009) ("*coram nobis* is an extraordinary writ" that "should not be granted in the ordinary case"). Indeed, the Supreme Court has cautioned that "it is difficult to conceive of a situation in a federal criminal case today where a writ of *coram nobis* would be necessary or appropriate." *Carlisle v. United States*, 517 U.S. 416, 429 (1996).

More specifically, a defendant seeking *coram nobis* relief must satisfy four requirements: (1) a more usual remedy, such as relief through 28 U.S.C. § 2255, must be unavailable; (2) the petitioner must have a valid basis for not having attacked his convictions earlier; (3) the consequences to the petitioner must be sufficiently adverse to satisfy Article III's case or controversy requirement; and (4) the error must be of the most fundamental character. *Bereano v. United States*, 706 F.3d 568, 576 (4th Cir. 2013) (citing *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012)). Only the second and fourth factors are at issue here.[6]

**III. The Court Should Deny Defendant's Petition.**

The Court should deny the Petition because Defendant fails to meet his burden to satisfy two of the four requirements needed to justify this extraordinary remedy. First, as explained below,

---

[6] As to the first requirement, "a more usual remedy (such as habeas corpus)" is "unavailable," *Bereano*, 706 F.3d at 576, because Defendant served his six-month sentence long ago and is no longer in custody. *See* 28 U.S.C. § 2255(a) (allowing a defendant who is "in custody" to move to vacate his sentence). As to the third requirement, the immigration consequences of Defendant's felony conviction are "sufficiently adverse to satisfy Article III's case or controversy requirement." *Bereano*, 706 F.3d at 576; *see also*, *e.g.*, *Akinsade*, 686 F.3d at 252 (observing that "the risk of deportation is an adverse consequence of conviction sufficient to create a case or controversy as required by Article III of the Constitution").

he has no valid basis for not having attacked his conviction earlier. Second, he also has not met his burden to show that his counsel was ineffective, as he has offered no evidence that his counsel failed to advise, or misadvised, him regarding the immigration consequences of his conviction. Alternatively, even if counsel rendered ineffective assistance, Defendant failed to show that any error prejudiced him, in that he would otherwise have gone to trial. On any of these independent bases, the Court should deny the Petition.

### A. Defendant Has Not Provided a Valid Basis for Failing to Attack His Conviction Earlier.

As an initial matter, the Court should deny the Petition because Defendant has not established a valid basis for not having attacked his conviction earlier. Although "there is no firm limitation of time within which a writ of *coram nobis* will lie, petitioners are required to demonstrate 'sound reasons exist[ ] for failure to seek appropriate earlier relief.'" *United States v. Rocky Mountain Corp.*, 442 F. App'x 875, 876 (4th Cir. 2011) (quoting *United States v. Morgan*, 346 U.S. 502, 512 (1954)). Defendant entered his guilty plea in 2011 and did not file his *coram nobis* petition until June 2026, 15 years later. He has not shown why he could not have attacked his conviction earlier. For example, he could have moved to vacate his guilty plea before sentencing, challenged his conviction on direct appeal, or sought relief under 28 U.S.C. § 2255 while he was serving his sentence. *See, e.g.*, *Colon v. United States*, 708 F. App'x 125, 125–26 (4th Cir. 2018) (per curiam) (concluding that the defendant failed to satisfy the diligence requirement where she "could have raised her ineffective assistance challenge to her conviction through a post-plea, pre-sentencing motion to withdraw her guilty plea, a direct appeal from the judgment of conviction, or a 28 U.S.C. § 2255 motion to vacate the conviction, but did not do so" (citations omitted)).

Defendant has been put on notice of the immigration consequences of his plea at multiple junctures during and after this case. First, the plea agreement, entered into by the parties on September 1, 2011, lays the issue bare as explained above. Importantly, it memorializes Defendant's desire to plead guilty no matter what the immigration consequences. ECF No. 217 at 11-12 ("Defendant [ ] affirms that defendant wants to plead guilty regardless of any immigration consequences that defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States"). Second, the presentence report ("PSR") may also include language pertaining to immigration consequences. As noted above, the file for this case is currently being retrieved from offsite storage. If so, Defendant and his counsel both affirmed at the sentencing hearing that they had reviewed the PSR and had no objections to it. *See* Exhibit A at 4:1-18. Further, the government is seeking Defendant's "A-File" to inquire as to whether Defendant had other immigration-related communication or contact. *See* note 4 above. Finally, even if none of those other events had occurred, at the very least, Defendant's January 2023 border encounter put him on notice. As in *Colon*, Defendant offers no "valid reason for waiting over three years," from at least the border encounter, let alone conviction or sentencing, "to challenge [his] conviction." *Colon*, 708 F. App'x at 126 (denying *coram nobis* petition). This Court has found that a delay of even one year is enough to disqualify a petition on timeliness grounds. *See Rocky Mountain Corp.*, 442 F. App'x at 876.

Nor does the fact that authorities did not pursue deportation previously provide a sufficient basis for failing to seek relief earlier. *See United States v. Masingene,* 3:12-cr-144, 2020 WL 6750355, at *6 (E.D. Va. Nov. 17, 2020) (finding that "[s]imply because ICE did not pursue her deportation until September 2018, does not amount to a sound reason[ ] ... for fail[ing] to seek appropriate earlier relief") (quoting *Rocky Mountain Corp.*, 442 F. App'x at 876)). Simply put,

under this Circuit's precedent, Defendant's showing is too little, too late. The Court should similarly deny Defendant's petition here.

### B. Defendant Has Not Established Fundamental Error in This Proceeding.

Even if Defendant had established a valid basis for failing to attack his conviction earlier, the Court should not issue the extraordinary writ of *coram nobis* because Defendant has not alleged an error "of the most fundamental character," as required by Fourth Circuit precedent. *Akinsade*, 686 F.3d at 252. Ineffective assistance of counsel can constitute such a fundamental error, *United States v. Mora-Gomez*, 875 F. Supp. 1208, 1211 (E.D. Va. 1995), but only if the defendant shows not only that (1) "counsel's performance was deficient" using the standard annunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), but also that (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Defendant has not met his burden as to either requirement in this case.

#### 1. Defendant Has Not Shown He Was Misadvised as to Immigration Consequences.

When an attorney affirmatively misadvises a client as to immigration consequences, there is fundamental error. *Akinsade*, 686 F.3d at 253 (finding ineffective assistance of counsel where an attorney told the defendant he could not be deported as a result of a guilty plea when pleading guilty in fact resulted in mandatory deportation). But there is no evidence of such mis-advice in this case. Although Defendant makes unsupported statements in his Petition that he received immigration assurances during unspecified meetings with his prior attorney and "homeland security" before entry of his plea, there is no actual evidence that Mr. McNabb failed to inform him, or misinformed him, of the immigration consequences of pleading guilty. Of course, had Defendant raised his concerns at any point between the 2011 plea agreement and 2024, when Mr. McNabb died, McNabb could have informed the Court himself as to what did or did not happen.

Defendant's failure to exercise the required diligence has deprived the parties and the Court of the ability to complete the record on this point – something that is Defendant's burden to carry.

What does exist in the record on this point supports an inference that McNabb would not likely have advised Defendant contrary to what is plain in the plea agreement. Again, the plea agreement lays out the immigration consequences in unambiguous terms: "[i]ndeed, because defendant is pleading guilty to Conspiracy to Distribute Cathinone, removal is presumptively mandatory." ECF No. 217 at 11. The plea hearing in this case occurred the year after the Supreme Court announced its decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). As a deeply experienced criminal defense attorney specializing in international and cross-border issues, Mr. McNabb would have had *Padilla*'s dictates at the forefront of his mind. It strains credulity to think he would have advised Defendant contrary to the express terms of the plea agreement. In any event, even if Defendant had actual evidence of the alleged meetings with "homeland security," because they occurred before the plea hearing, *see* Petition at 7, their content is immaterial. The immigration paragraph in the plea agreement constitutes full, accurate advice and by its own terms supersedes any previous representations. *See* ECF No. 217 at 13-14 ("defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in writing in this plea agreement, to cause the defendant to plead guilty"). Defendant has not and cannot meet his burden on this factor.

**2. Nor Has Defendant Established That He Would Not Have Pleaded Guilty.**

Even if Defendant had established that his counsel's performance was ineffective due to inaccurate advice regarding the immigration consequences of pleading guilty, Defendant is not entitled to relief because he has not "demonstrate[d] that but for his counsel's error, there is a reasonable probability that he would not have pled guilty and would have insisted on going to

trial." *Akinsade*, 686 F.3d at 253. Reasonable probability is evaluated based on whether "such a decision would have been rational under the circumstances" at the time, rather than a defendant's "subjective preferences" formed with the benefit of hindsight at some later juncture. *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012) (finding that a defendant's decision to go to trial would not have been objectively reasonable where the evidence of the count to which the defendant pleaded guilty was overwhelming). Defendant has not identified any contemporaneous evidence to support his *post hoc* assertion that he would not have pleaded guilty if he had known the immigration consequences of his conviction.

To the contrary, the record demonstrates that Defendant's decision to plead guilty was a rational one, made as part of a strategy to put himself in the best possible position with respect to his criminal liability by cooperating with the government against his co-defendants. As Mr. McNabb stated at the sentencing hearing, Defendant "got in very early [to plead and cooperate]. He completely and totally debriefed with regard to his own illegal activity, as well as the activity of others." Exhibit A at 6:14-16. Mr. McNabb believed that Defendant's early cooperation leveraged the guilty plea of the primary defendant. *Id.* at 6:16-19. The Court factored all of this in when sentencing Defendant to a modest six-month sentence, which was below the bottom of his Guidelines range. *Id.* at 13:8.

This was a sound strategy, as the reverse could easily have happened had others beat Defendant in the race to cooperate and plead guilty in this seventeen-defendant case. Defendant engaged in face-to-face illegal transactions with at least four co-defendants. *See* Statement of Facts, ECF No. 218, at 2. Any one of these co-defendants could have identified and cooperated against Defendant, putting him in a much less favorable position for sentencing. Yet other evidence further established Defendant's guilt, making a trial a futile exercise. Defendant conducted illegal

international transactions that left a paper trail through money service business records. *Id.* at 3. He was also caught discussing illegal activity on intercepted telephone conversations. *Id.* at 4. The plea agreement negotiated by Mr. McNabb, by which the government dismissed the money laundering charge and through which Defendant exercised his strategic choice to cooperate against others, was imminently reasonable. The alternative was to go to trial despite overwhelming evidence, face more serious charges and a longer sentence, and still incur a strong likelihood of deportation. Defendant has therefore not established that going to trial "would have been rational under the circumstances." *Fugit*, 703 F.3d at 260. As a result, even if the defendant had established that his attorney misadvised him, he would not be eligible for *coram nobis* relief because he has not proven an error "of the most fundamental character." *Bereano*, 706 F.3d at 576.

## IV. Conclusion

Defendant has fallen short of his lofty burden to justify this unusual and extraordinary remedy fifteen years after his conviction. He has failed to provide a valid basis for failing to earlier attack his conviction. He has also has not established fundamental error, as he cannot prove he was misadvised at all, much less that he was prejudiced by any alleged mis-advice. Accordingly, the Court should deny Defendant's petition.

Respectfully submitted,

TODD W. BLANCHE<br>ATTORNEY GENERAL

THEOPHANI K. STAMOS<br>FIRST ASSISTANT UNITED STATES ATTORNEY

Date: August 20, 2026 By: /s/<br>Ethan Carson Eddy<br>Assistant United States Attorney

Cal. Bar No. 237214
2100 Jamieson Ave.
Alexandria, VA 22314
(703) 299-3824
(703) 299-3981 (fax)
ethan.eddy@usdoj.gov